*Orange,*
*February,*
*1827.*

THE OVERSEERS OF THE POOR OF CORINTH, appellees, *vs.* THE OVERSEERS OF THE POOR OF BRADFORD, appellants.

In case of an appeal from an order of removal, the question, whether chargeable or likely to become so or not, is material, and may be raised by the appellant, in the court to which the appeal is taken; but this defence being of an interlocutory nature, or a temporary bar, must be taken advantage of, by a motion to quash, or by a special plea in bar, setting forth the fact.

A plea to the *merits* should state, and rest upon the fact, that the town to which the removal is made, is not the legal settlement of the pauper.

There is no general issue in these cases, and the plea of "unduly removed," which has sometimes been used, is bad.

See Bradford
vs. Corinth,
vol. 1, p. 290.

A new trial having been granted in this cause, by this Court, at their February term, 1826, on the motion of the appellees, the same was had before a jury, at the last June term of Orange county court, and a verdict returned, "that the pauper was duly removed." On this last trial, exceptions were taken by the appellants, which appear in the following case, placed upon the record by the agreement of the parties, viz :

"This was an appeal from an order, made by two justices of the county of Orange, for the removal of one *McConnell*, his wife and family, from the town of *Corinth* to the town of *Bradford*. The overseers of the poor of *Bradford* pleaded that the said pauper was *unduly removed*, by the said order, from *Corinth* to Bradford, and issue was joined on the plea. The cause came on to be tried at this term, (June, 1826) on the said issue, by a jury duly empaneled and sworn. The overseers of the poor of Corinth offered evidence tending to prove, that said *McConnell* had his last legal settlement in the town of Bradford. The counsel for *Bradford* admitted that fact, and on this admission the counsel for *Corinth* rested their case. The counsel for *Bradford* insisted before said Court, that it was incumbent on the overseers of the poor of *Corinth*, to prove, also, that the said *McConnell*, at the time of making said order, *had become already*, or *was likely to become, chargeable to the said town of Corinth*, and requsted the Court so to charge the jury. But the Court, on the

contrary, gave in charge to the said jury, that it was not necessary for the said overseers of the poor of *Corinth* to give evidence on the trial, showing or tending to show, that at the time of making the said order of removal, the said *McConnell* was chargeable, or likely to become chargeable, to the said town of *Corinth*, and that the said overseers of the poor of *Corinth* had, without such showing, made out their case, and were entitled to a verdict on the said issue.   To which opinion of the court the counsel for the town of *Bradford* did except, and pray the court that their exceptions may be entered of record, and pass to the Supreme Court for a final decision, and that execution be stayed."

And now the overseers of the poor of Bradford move the Court, that the judgment of the county court be reversed, and for a new trial, for the cause appearing in the exceptions aforesaid.

*Marsh*, in support of the motion.   The only question presented in the exceptions filed in this case, is, whether it was incumbent on the overseers of the town procuring the order of removal, to show on the trial, that the pauper had become, or was likely to become chargeable to the town from which the pauper was ordered to be removed.

Should the Court be of opinion that it was incumbent on Corinth to show this, a new trial must be granted.   If they should be of a different opinion, judgment will be affirmed.

The counsel for *Corinth* regards this matter of objection to the proceedings as in nature of a dilatory plea, or subject matter for a plea in bar, and that it cannot be taken advantage of under the plea of *unduly removed;* and the decision was made on this ground at the trial.

To this it is answered, that this is a summary proceeding, and no other mode of putting a defence on paper and bringing it properly before the court, is known, or to be found in the precedents or in our practice, than that of pleading, *that the pauper was unduly removed*, or a motion to *quash* the proceedings.   If this be correct, it will follow, that every defence which is not properly brought before the court, in a motion "to quash the proceedings," must be good under the plea of "*unduly removed.*"

In what case, then, is a motion to quash, proper ?   It is only when there is on the face of the proceedings some defect; a neglect to state some fact which is necessary to render the proceedings legal.   On motion to quash, you can never go out of the record.   The motion must be grounded on something which appears, or want of something which does not appear on the face of the proceedings.

A motion to quash, in these summary proceedings, is precisely analagous to a plea in abatement, demurrer or motion in arrest, in proceedings at common law.

The plea of *unduly removed* may be regarded as a kind of general issue given by the statute.

*Orange,*
*February,*
*1827.*

Corinth
*vs.*
Bradford.

*Orange,*
Fqbruary,
1827.

Corinth
*vs.*
Bradford.

Every thing which shows, that the overseers have no reason to complain, or no ground of proceeding, or shows, that the court below ought not to have made the order, is proper under this plea.

Was it then necessary under the statute, that the pauper should have been chargeable, or likely to become so, in order to justify the overseer in complaining, or the court in making the order?

Stat. 370, § 3.       The act is, "that if the overseers of the poor, &c. shall find, suspect, or have reason to believe, that any stranger, &c. has already, or is likely to become chargeable, &c. it shall be lawful for any two justices, &c. on complaint of such overseer, to issue their warrant, &c." and again, "If such justices shall find such stranger likely to become chargeable, &c. &c. they may order such stranger, &c. to remove, &c."

Then it appears, that the prospect of the pauper's becoming chargeable is the *sine qua non,* without which the overseer cannot complain, nor the justices remove; and yet, is not this to be proved before the justices, and again on an appeal in the county court?   Are the citizens to be driven about at the pleasure of an overseer on the mandate of two justices, who are neither chargeable, nor likely to become so?   Have not the citizens of this state a right to seek a livelihood in any town where they please, without being molested in this manner?   But it is said, "this matter should be pleaded;" but how pleaded?   In abatement?   What, plead in abatement the non-existence of a fact which is the foundation of the whole proceedings?   Plead in abatement that the defendant did not premise that he is not liable!   But who ever heard of a plea in abatement to a summary proceeding like this.   A motion to quash, in this kind of proceeding, is a substitute for not only a demurrer, but for a plea in abatement also, at law.   In this very case at the last term, this Court decided, that it not appearing from the proceedings, that a copy of the order of removal had been left with the overseer of Bradford, was ground for quashing the order, but not good showing under the plea of *unduly removed.*—1 *Aik. R.* 290.

But allowing a plea in abatement to be proper, in a proceeding of this kind, yet this is no proper cause of abatement. Pleading it in abatement, would be pleading a fact essential to the merits of the case in abatement.

Will it be said, that it should have been pleaded in bar? Pleading in bar is placing upon the record some fact which shows a defence, notwithstanding the truth of all the necessary facts stated on the part of the plaintiff, and admits all such facts. Now it is stated in the complaint, *that the pauper was likely to become chargeable.*   How then could this fact be admitted, and not denied by a plea in bar?

Will it be said, that this particular fact should have been selected from the other *allegata* by a special traverse?

Why should this fact be traversed in this manner, rather than the fact *that the pauper belonged to the town of Bradford?*   Both

*Orange,*
*February,*
*1827.*

Corinth,
*vs.*
Bradford.

facts must concur, otherwise this pleading is erroneous, if not irregular; and if either be wanting, the pauper is unduly removed. Why not, then, deny both facts, by one general plea? This is already done, for the deficiency can be reached by no other plea than *unduly removed.*

It would seem, that the omitting to state any fact in the proceedings, the omission of which would be a good reason for quashing such proceeding, would show that such fact ought to be proved at the trial.

The two facts above mentioned, viz. *that the pauper has become, or is likely to become chargeable to the plaintiffs' town, and properly belongs to and has his settlement in the defendants' town,* must be stated in the complaint, and found by the justices, otherwise the proceedings are always quashed.

"Exceptions were taken to an order of two justices, because it was only said to be complained by two church wardens, that the person removed was likely to become chargeable, but not adjudged so by the justices.

Holt, Ch. J. said, the justices cannot remove a man, unless he is likely to become chargeable, for otherwise they might remove a man of an estate.

It ought to appear, that the person removed is a person removeable, and there ought to be a particular averment that he is likely to become chargeable.—*Suddlecomb* vs. *Burwash,* 2 *Sal.* 491.

An order to remove a poor person was quashed, because it was not said, that he was poor, or likely to become chargeable to the parish, &c.—*Scrivenham* vs. *St. Nicholas,* 3 *Sal.* 255.

In every order for the removal of a poor person, it ought to appear that he is removable by law; therefore it ought to be averred, that he is chargeable, or likely to become chargeable to the parish, and there ought to be an adjudication of that matter and of the last place of his lawful settlement.—8 *Mass.* 276.—*S. P. Dalton's Justice,* 181.

It was objected, that the paupers were said to be likely to become chargeable, but did not say to what parish. The words were, *and whereas upon due examination* and *inquiry, it appears to us,* and *we do accordingly adjudge, that they are likely to become chargeable.*

By Lee, Ch. J. and the whole Court. The objection is fatal. A complaint must appear, of the pauper's being likely to become chargeable to the parish from whence he is removed, and there must be adjudication of the truth of it; for the justices have no authority without such complaint and adjudication. We cannot support an order by implication. There is no necessity for any particular form of words, but there must be an adjudication of it in some words or other.—*Netherton* vs. *Hoblench, Bur. settl. cas.* 138-9.—1 *Stra.* 143.

It would seem from the authorities, as well as from the statute, that no person is liable to be removed, unless he is chargeable, or likely to become so, and that the proceedings are bad,

Orange,
February,
1827.

Corinth
vs.
Bradford.

unless this is stated in the complaint, and found true, by the justices; and this must appear in the order. If this be so, how can a person who is not liable to be removed at all, be said to be duly removed. It has been said, that this is a question in which the town has no concern; that no one can complain, except the pauper. That the only question for the town to controvert, is, whether the pauper had his settlement in the defendants' town.

But how is the pauper to complain? He is not a party to the suit, and cannot be heard in its defence. Will it be said, that he is to have redress by action, for being illegally removed? This would be to set the law at variance with itself. The pauper is duly removed, and yet would have an action for being illegally, that is, *unduly*, removed:

Has not the town an interest in having its poor inhabitants permitted to seek a livelihood in another town, which they cannot find in their own? Are the poor families and children who acquire a living and are useful in factories, liable to be removed and thrown upon their town, when they are neither chargeable nor likely to become so, because the factory does not stand in the town of which they are inhabitants?

It is said, that the plaintiff's town will be concluded as to the settlement of the pauper, if issue be found against them, on the ground that the pauper had not become chargeable. This is admitted; and so it ought to be, if the plaintiff will pursue this order to a final trial, and the finding of a verdict.

Which would be the greatest evil, to have the pauper in such case fixed in the wrong town, or to permit the overseers and justices to be continually harrassing themselves and the authority of other towns with their complaints and orders, without any statutory ground of complaint?

If they pursue to a final judgment, it is their own folly. They may in any stage of the proceedings discontinue, and avoid the evil, if they choose.

It will not be denied, that this not appearing in the complaint or order, is a sufficient ground for reversing or quashing such order.

If, therefore, the proceedings had gone up without the averment, that the pauper was chargeable, &c. they would have been quashed.

An order quashed is imperative on the parties. Judgment in many other cases will be final, when the merits are not tried, if the plaintiff has the hardihood to proceed to verdict and judgment. As an *assumpsit*, when notice is necessary, but not proved at the trial, he may become nonsuit; if he declines this, the verdict and judgment will be final.

· *Buck*, contra. The town of *Corinth*, on trial under the issue of "unduly removed," proved more than one year's residence of the pauper in *Bradford*, under the act of 1801, and rested their case upon this testimony.

*Orange,*
February
1827.

Corinth.
*vs.*
Bradford

*Bradford* then contend, that the town of *Corinth* should show, that the pauper was chargeable, or likely to become chargeable. This evidence is not necessary, as the town of Bradford have put in issue only one fact, viz. *the legal settlement of the pauper.* To quash the order for this cause will have the effect to fix the pauper's settlement in *Corinth,* as the record will show that it was quashed upon the merits.

This case was before the court at the last term, upon a similar question, and the court then decided, that if the town of *Bradford* would quash the order for any cause, other than the want of a legal settlement of the pauper in *Bradford,* that cause must be assigned, and entered upon the record.

The opinion of the Court was delivered by

HUTCHINSON, J. A plea has been filed, on the part of Bradford, that the said pauper was unduly removed from said Corinth to said Bradford, concluding to the country. No objection appears to have been made to the reception of this plea, but issue joined thereon.

That issue has been tried in the county court, and on that trial it was conceded, that Bradford was the place of the last legal settlement of the pauper. On that concession, the counsel for Corinth rested the cause, probably considering, that the plea put in issue nothing but the question of settlement, which was already conceded.

But the counsel for Bradford contended, that the plea put in issue, and it was necessary for Corinth to prove the fact, that the pauper was chargeable, or was likely to become chargeable, to said Corinth; and requested the court so to charge. The court refused so to charge; but did charge, that the overseers of the poor of Corinth were entitled to a verdict without such testimony. A verdict was returned in favour of Corinth, and the above decision of the court was excepted to, on the part of Bradford; and a new trial is now urged because of that decision.

There is some difficulty in disposing of this question so as to prevent a surprise that might operate to the injury of one party or the other. The concession made on the part of Bradford, that the pauper was settled there, might be made in a full reliance upon the other point for success, and might be intended for that trial only; while a contrary decision of the court might have equally surprised Corinth, because they supposed the plea put in issue the settlement only.

There can be no doubt but the fact of the pauper's being chargeable, or likely to become so, is of an interlocutory nature, and is intimately connected with the right of the magistrates to hold jurisdiction over the pauper, and make any order for his removal: hence the orders are uniformly quashed, which do not show the fact adjudicated upon; but yet it has nothing at all to do with the question, where his legal settlement is; or, to what place he shall be removed, if any order be made for his removal.

Corinth.
*vs.*
Bradford

It is easy to conceive, that a pauper may be removed to the place of his legal settlement, at a time when he is not chargeable, nor likely to become so; and for this reason the order ought to be quashed; and at a later period, he may become chargeable, and may well be removed. The quashing, therefore, should be for a cause apparent of record, and show an irregularity aside from the merits of the settlement, that it may not interfere with another order of removal to the same place, when new occurrences render the same proper.

In civil actions, while almost any matter, showing that there is no cause of action, may be given in evidence under the general issue; yet, whatever operates as a temporary bar, and virtually admits, that the cause of action may, at some future period, avail the plaintiff, must be exhibited in a special plea, or with special notice. So here, if the pauper was legally settled in Bradford, an order of removal to that place may, at some day, be proper. If it is not now proper, because the pauper is not now chargeable, nor likely to be so, that should be treated as a temporary bar to the claim of Corinth, and be presented and urged in a motion to quash, or a plea in nature of a plea in abatement or in bar.

The English practice in pauper cases would leave a doubt, whether this question can be raised at all in a court of appellate jurisdiction, otherwise than upon objections to the order upon the face of it. In the third of *Burns' Justice,* 471, after reciting many cases of orders being quashed for a defect in the order in this respect, it is said, that it does not appear from any adjudged case, that, upon appeal, it was ever controverted, whether the person was, or was not, likely to become chargeable. Either the persons removed were all confessedly of this description, or the recital by the justices, of their adjudication upon this point, was deemed conclusive; and no decision gives us any light upon the subject.

But, there, as here, the decisions were usually exparte, in relation to the parish to which the pauper was removed, but they were in presence of the pauper, who, by their statute, has a right to appeal. Hence it is probable, that his resistance to a premature removal might save the necessity of raising the question by proof at the sessions. The analogy of other cases would seem to require, that the town, to which the pauper is sent by an exparte process, should somewhere have an opportunity to litigate every important allegation in the complaint and order; and one as much as another, if done in due season, and by a proper motion or plea.

It would be a *total* departure from this analogy to decide, that the fact of being chargeable, or likely to become so, should be the essential fact to give the magistrates jurisdiction, and, that they must adjudge this in the affirmative, and so certify, or their proceedings will be quashed for this defect; and yet decide, that the town to which the pauper is removed can never in any way dispute this fact, after they have notice of the order.

Orange,
February,
1827.

Corinth
vs.
Bradford.

The language of our statute attaches the same importance to this fact, as that of the English statute; and, so far as the argument of protection to the pauper's rights should be weighed, it might seem more important here than there, because our statute gives the pauper no right of appeal.

This is the first case recollected, in which the same question has been urged in the court appealed to in this state. It may be the first case in which it could be raised with plausibility. It may have been now raised upon a sudden failure of the defence upon the merits.

There seems at first view, no great hardship to the town where the pauper has his legal settlement, for him to be sent home, even if he is not likely to become chargeable to any town.

But, upon reflection, the removing a man from his chosen residence, and disorganizing his whole plans of gaining a livelihood, and forcing him to reside in a given town, whether encouragement is, or is not there afforded for the pursuit of his particular calling, has a powerful tendency to reduce men to pauperism; while a free choice of the place, as well as the manner of each man's pursuits, affords encouragement to industry, and facilitates the acquisition wealth.

But it must not be inferred, from what is now observed, that an order will be quashed upon any nice or difficult point in the weight of evidence. A man, whose means of subsistance are so scanty that he could not meet a day of sickness, of himself or famliy, without assistance from the town or from his neighbours, is likely to become chargeable within the meaning of the statute: and the town is not obliged to wait till he is become actually chargeable before they remove. Otherwise, of a man in profitable business, increasing in wealth, and already able to stem the torrent of adversity, which, by the way, is not seen approaching. If a case should arise so strongly marked as to afford presumption of unworthy motives in the overseers, and, perhaps, partiality in the magistrates who now may be inhabitants of the town from which the removal is ordered, it does seem proper that, in such a case, the question should be revised at the instance of the town that is, or may be, affected by the removal.

The result of all this may seem to be, that the town of Bradford, after taking their appeal, would be admitted, in the form of a dilatory plea or temporary bar, to have placed this question in issue, and driven the town of Corinth to produce the testimony called for on this trial. But, having interposed no such plea, they are now too late to avail themselves of this part of their defence.

This, however, depends upon the view the court may entertain of the plea upon which was joined the issue that was tried by the jury.

The plea is, that the pauper was unduly removed; and does not proceed to assign any reason why, or set forth any facts de-

*Orange,*
*February,*
*1827.*

Corinth
*vs.*
Bradford.

signating on what ground reliance was placed for defence. My brethren understand that this form of plea has been considerably in use; but we do consider it a very defective form in which to present the rights of the parties for a decision. It is really similar, in principle, to a plea in bar, which should say the plaintiff ought to be barred, and stop without assigning any reason for the bar. It must be considered a mere nullity, unless it should be considered, as now contended on the part of Bradford, a sort of general issue, putting upon trial all the material allegations of the order appealed from. There is much difficulty in this course. This plea is not a technical denial of any fact alleged in the order. And the mention of the fact of an undue removal in the seventh section of the statute, in no sense dictates the form or substance of the issue to be tried; but alludes to the determination of the court merely. Where the law is that the party recovering shall have execution for the sum recovered, it was never supposed that this would warrant a plea that the plaintiff ought not to recover. The defendant must plead a plea suited to his defence. The issue of *non assumpsit* denies the promise relied upon; not guilty denies the doing of the wrongful act complained of. A plea in bar of an accord and satisfaction, alledges what the accord and satisfaction are, so that the plaintiff may deny the same, and put directly in issue the matter in controversy. While a plea that the pauper was unduly removed, or that the plaintiff ought to be barred, or that the plaintiff ought not to recover, without adding more, so literally mean any thing the party would have them mean, that, in a legal sense, they mean nothing. The plea in the present case may literally mean, that Bradford was not the place of the pauper's settlement, therefore he ought not to have been removed thither : or, he was not likely to become chargeable to Corinth, and ought not to have been removed thence to any place ; or, in the act of removal, the officer was irregular and abusive to the pauper. And, as a decision upon this plea, reversing the order, *might* be made upon the merits of the settlement, it would be conclusive to discharge Bradford from the support of the pauper: for it would be presumed to have been decided upon the merits as laid down in 3d of *Burns,* page 502, *South Cadbury* vs. *Braddon.* It would not, therefore, be proper to admit a decision in favour of Bradford, upon this plea, unless upon evidence affecting the question of settlement. Indeed, it is not recollected that any other question than this has before been urged under such a plea. I can add, for myself, I have no recollection of ever before knowing of such a plea. Such language has been used concerning pleas in pauper cases, but I supposed the pleas designated the facts to be put in issue. Such was in fact the case in several pauper causes which I could name.

The discussion of this same cause, a year ago, was upon a point still further remote from the plea and the allegations in the complaint and order ; a point in no sense attended to in either ; as may be seen from the case then decided, and from the

report of the decision.   No circumstance drew the attention of the Court to consider the plea in reference to its extent to the different matters in the case not then litigated.

The Court being now called upon, for the first time, to consider this subject, we are disposed to make such a decision as, if followed, will point out a safe and convenient course of practice, that both parties may know for certainty what facts are put in issue by the pleadings, and prepare accordingly ; and that any issue that may involve the merits of the settlement shall not be incumbered with any facts which might be the subjects of dilatory motions or pleas.

We therefore decide, that the question whether chargeable or likely to become chargeable, or not, may be raised by the appellants in the court appealed to : but that must be done by a motion to quash, or plea in bar exhibiting that fact as the ground of the interlocutory defence : that a plea to the merits should state, and rest upon the fact, that the town removed to was not the legal settlement of the pauper.   That the plea in this case must, for the reasons before assigned, be considered a mere nullity ; and had the verdict been returned for the defendant, on such a plea, justice would have required the court to award a repleader.   That the decision of the county court was correct in not requiring of the appellees proof of dilatory matter upon an issue, the decision of which would be final upon the merits. But, instead of entering judgment on the verdict, we consider another course necessary, for the promotion of justice.   The defendant put in this plea, supposing it settled by practice. The plaintiff supposing the same, did not object to receive the plea, nor demur to it ; but joined the issue presented by the plea. The plea, denying nothing that was alleged, but almost equally denying every supposal in the complaint and order, the appellants might consider it as a sort of general issue, and rely upon the point urged, and may have made their preparation accordingly.   We will not, therefore, surprise the defendants by an important change in practice, without an opportunity to plead anew, and present such facts as they have before supposed were in issue.   If the defendants choose thus to withdraw their plea, and plead anew such facts as we have now considered, they have leave to do it, making their election forthwith.   In which case, the verdict will be set aside, and the cause will stand for trial upon the new pleadings.

Skinner, Ch. J. concurred in the opinion pronounced, except in one particular.   He doubted whether it was not the business and the duty of the *party sought to be removed,* to contest his liability to become chargeable, if such liability did not exist. But on this point he was desirous of looking into authorities, which his present situation afforded him no opportunity to consult.

17

The counsel for *Bradford* signified their wish to plead anew; whereupon a new trial was granted, and the appellants ordered to file their plea by the first Monday in June next.

Corinth
*vs.*
Bradford.

*Moses Chase* and *Chs. Marsh*, for the appellants.

*D. A. A. Buck* and *Wm. Upham*, for the appellees.